Burke, J.
The People appeal by permission from the reversal by the Court of Special Sessions, Appellate Part, of a conviction of defendant in Magistrates’ Court for a violation of the Rules and Regulations of the Department of Air Pollution Control adopted pursuant to chapter 47 of the Administrative Code of the City of New York.
*44 The rules prohibited the sale or transportation of any solid fuel with a volatile content in excess of 24% on an ash- and moisture-free basis for hand-firing equipment (Rules of Department of Air Pollution Control, rules 14.3, 14.3.2, 14.4).
The charge is that defendant sold bituminous coal having a volatile content of 31.44% at the premises known as 158 East 100th Street, New York City, for consumption in hand-fired fuel burning equipment.
The basis for the reversal was that the sample of coal taken by the inspector for analysis by the city’s chemist was, according to a specific standard which was allegedly prescribed by the department, too small to be representative of the bulk of the coal sold.
The evidence presented in support of the charge shows that at least 4 increments of coal weighing between 8 to 15 pounds were taken from different parts of the batch in the truck as the coal came down the chute. Each increment was put on a tarpaulin and partly pulverized with a tamping device to reduce the size of the coals. The coal pile on the tarpaulin was quartered and half of the quartered part discarded. This procedure was repeated until the quantity was reduced to two or three pounds. Then the sample was mixed and the mixture was placed in two wax containers which were sealed at that time. One container was given to the driver for delivery to the coal company and the other container was delivered to the city’s laboratory. The chemist, whose qualifications were not challenged, testified that when tested the sample delivered contained 31.44% volatile matter on an ash- and moisture-free basis. The defendant rested without calling witnesses or offering proof to controvert the evidence submitted by the People. The motion to dismiss the information was made on the sole ground that the city had failed to follow the procedures for testing of the American Society for Testing Materials.
Defendant’s argument is predicated on the contention that the Department of Air Pollution Control adopted a specific standard of testing when it included in its rules a definition of “ Volatile matter” as “ The gaseous constituent of fuels as determined by standards of American Society for Testing Materials ” (cf.' Rules and Regulations of the Department of Air Pollution Con *45 trol, § 0). The American Society for Testing Materials procedure under this standard of testing provided for the taking of a gross sample of not less than 90 pounds, consisting of a minimum of 9 increments, each increment weighing not less than 10 pounds (American Society for Testing Materials, designation D 980-53).
We believe that the city satisfied the obligation imposed on it when it adduced testimony which disclosed that the sample coal which concededly was to be used in hand-fired equipment, when analyzed, exceeded the permissible content.
The defendant’s decision to base its defense on an alleged noncompliance on the part of the department with a specific procedure for the sampling and analysis of coal for volatile matter was ill advised.
In cases where the applicable statute does not specifically prescribe the procedure to be used in testing, the courts accept evidence of methods of testing made by recognized processes. But even if we assume that it was the intention of the board to adopt the standards of the American Society for Testing Materials as a standard of testing, the board is not limited to the standards mentioned, but may give evidence of any tests shown to be accurate. (United States v. One Hundred Barrels of Vinegar, 188 F. 471 [U. S. Dist. Ct., Minn.]; see, also, United States v. 449 Cases, Containing Tomato Paste, 212 F. 2d 567 [C. A. 2d]; United States v. Two Hundred Cases of Canned Salmon, 289 F. 157 [U. S. Dist. Ct., S. D. Tex].)
The People during the argument on the motion to dismiss the information said the department used the “ Special Purpose Sampling Procedure” (American Society for Testing Materials, designation D 492-48). It contends that special accuracy was required as to the degree of volatile matter in the sample. Pursuant to this designation, the sample was allegedly “ taken in accordance with the United States Bureau of Mines method or its equivalent, and ’ ’ was ‘ ‘ placed in a moisture-tight container ” (cf. American Society for Testing Materials, designation D-383-38, § 5, subd. [b]). This method specified that, in collecting a gross sample for ‘ ‘ slack or small sizes of anthracite, increments as small as five to ten pounds may be taken, but run-of-mine, or lump coal, the increments should be at least ten *46 to thirty pounds depending on the size and weight of the pieces of coal and impurities being sampled ” (TI. S. Bureau of Mines Technical Paper, No. 133 — George S. Pope).
The court below had no evidence before it which indicated that that procedure of testing used could not reasonably and accurately determine the volatile content. Hence the reversal of the conviction on the grounds asserted is not supported by any proof. Although there is nothing, in the record to cause doubt as to the methods employed by the Department of Air Pollution Control, we think that proof should be taken as to the adequacy and accuracy of the test.
Inasmuch as a sample similar to the test sample was delivered to the defendant at the time of inspection, defendant may have an expert both check the results of the People’s test and give testimony as to whether the method used was designed to fulfill the purpose of the statute.
The order of. Special Sessions is accordingly reversed and a new trial ordered.